UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOB D. BEASLEY,<br><br>                      Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>                      Defendant. | Case No. C10-5486-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Bob D. Beasley seeks review of the denial of his Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) applications. He contends the ALJ erred by (1) failing to identify all of Mr. Beasley's severe impairments and consider all of the functional limitations they cause, (2) improperly evaluating the medical evidence, (3) improperly evaluating Mr. Beasley's testimony, (4) improperly evaluating the lay testimony, and (5) improperly assessing Mr. Beasley's residual functional capacity.[1] Dkt. 13 at 17. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Beasley is currently 43 years old, has a high school education, and has worked as a

---

[1] Mr. Beasley withdrew the claim the ALJ relied on evidence that was not included in the exhibit file. Dkt. 28.

REPORT AND RECOMMENDATION- 1

sheriff's deputy, wrestling coach, truck driver, teacher's aide, and security guard.[2]  He filed two separate applications alleging disability as of December 15, 1999.  Tr. 23.  His September 27, 2001 application for DIB[3] and his June 30, 2004, application for SSI benefits were both denied initially and on reconsideration.[4]  The ALJ conducted a hearing on October 3, 2007, finding Mr. Beasley not disabled.  Tr. 20.  As the Appeals Council denied Mr. Beasley's request for review, the ALJ's decision is the commissioner's final decision.  Tr. 2.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[5] the ALJ made the following findings:

**Step one:**  Mr. Beasley has not worked since December 15, 1999.  Tr. 25.

**Step two:**  Mr. Beasley has the following severe impairments: right ankle distal tibio-fibular syndesmotic diastasis with surgical interventions, cervical syrinx at C6-C7, cervical degenerative disease at C5-6, and osteoarthritis in the left knee.  *Id.*

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[6]

**Residual Functional Capacity:**  Mr. Beasley has the capacity to perform sedentary work as follows:  He can lift or carry 10 pounds occasionally and less than 10 pounds frequently.  He can stand or walk for at least 2 hours and sit for about 6 hours in an 8-hour workday.  He can occasionally push with the right ankle.  He can occasionally climb ramps and stairs, but never a ladder, rope, scaffold.  He can occasionally balance, stoop, kneel, crouch, and crawl.  He can perform frequent handling bilaterally and must avoid concentrated exposure to vibrations and hazards (machinery, heights, etc.).  Tr. 27.

**Step four:**  Mr. Beasley cannot perform his past work.  Tr. 35.

**Step five:**  As there are jobs Mr. Beasley can perform, he is not disabled.  Tr. 36.

---

[2]  Tr. 74, 155.
[3]  Tr. 80-82, 84-87.
[4]  Tr. 73-74, 76-79, 652-53, 655-58.
[5]  20 C.F.R. §§ 404.1520, 416.920.
[6]  20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION- 2

**DISCUSSION**

**1. Identification of Severe Impairments and Consideration of Impairments**

Mr. Beasley argues "the ALJ failed to properly identify all of the claimant's severe impairments and failed to properly consider all of the functional limitations cause by all of claimant's impairments." Dkt. 13 at 18. The argument raises two separate issues. First, did the ALJ fail to identify all of Mr. Beasley's "severe impairments." At step two, Mr. Beasley had the burden of showing (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is "not severe" if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Mr. Beasley argues the ALJ should have considered shoulder, hip, and knee pain and hand numbness. The Court assumes Mr. Beasley is arguing these are the severe impairments the ALJ erroneously failed to "identify" at step two. The record does not support this argument. The ALJ clearly considered Mr. Beasley's shoulder, hip, and knee pain and his hand numbness and found, in view of the medical record, that these impairments were "not severe." Mr. Beasley cites to no medical evidence showing the ALJ erred; the Court thus rejects the argument the ALJ failed to identify Mr. Beasley's severe impairments.

The second issue is whether the ALJ failed to consider the functional limitations caused by all of Mr. Beasley's impairments. Mr. Beasley presents nothing indicating what functional limitations the ALJ failed to consider, why the ALJ should have considered these limitations and why he was prejudiced by the ALJ's failure to do so. The Court rejects the argument as unsupported. Mr. Beasley's failure to support his claims also raises the issue of waiver.

REPORT AND RECOMMENDATION- 3

Claims that are unsupported by explanation or authority may be deemed waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at * 2 (unpublished opinion) (citing *Northwest Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

Here, Mr. Beasley raises possible arguments but fails to support them. It is not enough merely to present an argument in the skimpiest way, and leave the Court to do counsel's work—framing the argument, and putting flesh on its bones through a discussion of the applicable law and facts. *See e.g. Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n. 4 (5th Cir. 2005) (argument waived by inadequate briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review). The Court thus further rejects the claims as waived.

**2.  Evaluation of the Medical Evidence**

Mr. Beasley argues the ALJ erred in failing to mention Dr. Kenneth R. Sebby's opinion that Mr. Beasley is an "orthopedic dilemma" and has a "poor prognosis" and a statement Dr. Douglas Lindahl made in a 2007 letter. He also argues the ALJ erred by failing to discuss Mr. Beasley's MRI reports. Dkt. 13, 19-21; Dkt. 28 at 2-4.

**2.1.  Dr. Kenneth R. Sebby, M.D.**

In a letter dated April 20, 2004, Dr. Sebby opined Mr. Beasley is "an orthopedic dilemma because there is frankly so much going on" and that Mr. Beasley's prognosis was "quite poor." Tr. 338-39. Mr. Beasley argues these opinions contradict the ALJ's finding Mr. Beasley can

perform sedentary work and that the ALJ erred in failing to mention the opinions. Dkt. 28 at 2. An ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Id*. at 1394-95.

Dr. Sebby rendered the opinion Mr. Beasley was an "orthopedic dilemma" with a poor prognosis in the context of a consultation for surgery. There is no dispute Mr. Beasley has orthopedic problems with his ankle, back, and left knee that affect his ability to work and which cause him pain. The ALJ acknowledged this in finding these conditions to be severe impairments that could reasonably produce Mr. Beasley's alleged symptoms, and in finding Mr. Beasley cannot perform his past work. Tr. 32. Hence, the question is exactly how does Dr. Sebby's opinion affect the ALJ's finding that Mr. Beasley can perform sedentary work.

The answer is not much. Mr. Beasley fails to explain why or how the doctor's opinions show he cannot perform sedentary work. That is understandable since Dr. Sebby did not indicate exactly what his opinions meant in regards to Mr. Beasley's functional limitations, and gave no other opinions about Mr. Beasley's ability to work. The disconnect between the doctor's opinions and whether Mr. Beasley cannot work is not surprising—the doctor did not evaluate Mr. Beasley's functional limitations but was evaluating Mr. Beasley's surgical options. Given the context in which the doctor rendered his opinion, the unclear nature of his comments in regards to Mr. Beasley's ability to work, and the fact the doctor's letter contained no opinions on Mr. Beasley's functional limitations, the ALJ did not err in failing to mention the two opinions complained of here.

REPORT AND RECOMMENDATION- 5

**2.2.   Dr. Douglas Lindahl, D.O.**

Mr. Beasley also contends the ALJ erred in failing to "accurately summarize Dr. Lindahl's February 2007 letter." Dkt. 13 at 20. Specifically he contends the ALJ erred when he failed to mention the following statements the doctor made:

> Diffuse tenderness across thoracic spinous processes with tenderness inparavertebral areas as well. Tenderness diffusely in cervical region but less than thoracic. Reduced range of motion in all planes of neck. Walks and moves with guarding movements. Thoracic pain increased with muscle strength testing of arms. Slight downward pressure on the head results in markedly increased back and neck pain.

Dkt 28 at 3. The ALJ did not err in failing to mention this statement. First, Mr. Beasley again fails to explain why or how this statement shows he cannot perform sedentary work. It is not enough to show the ALJ failed to mention a statement in the medical record. If this were the case, an ALJ's failure to mention and discuss every bit of medical information would always constitute error. But, as discussed above, an ALJ must only explain why "significant, probative evidence has been rejected" and need not discuss all evidence. Hence, in regards to Dr. Lindahl's statement, Mr. Beasley needs to show that it mattered to the finding the ALJ made—that it prejudiced him. This is something he has not done. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error may be harmless where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate decision).

Second, Dr. Lindahl did not opine in the February 2007 letter that the conditions noted above rendered Mr. Beasley unable to perform sedentary work. While the statement describes findings made by the doctor, there is nothing in the statement that establishes Mr. Beasley cannot perform sedentary work. Additionally, as the ALJ pointed out, Dr. Lindahl performed a separate physical evaluation in which he opined Mr. Beasley had the capacity to perform sedentary work.

REPORT AND RECOMMENDATION- 6

Tr. 33. That evaluation noted Mr. Beasley had hip, shoulder, neck, back and knee pain; that he had pain sitting, standing and walking; and that he had problems with his hands. Tr. 308. The evaluation noted that these conditions caused mild impairments to sitting, walking, standing, lifting; moderate impairment to handling and carrying; and also restricted Mr. Beasley's mobility, agility, balance, bending, climbing, kneeling, and sitting. Tr. 310. Based on his evaluation, Dr. Lindahl concluded Mr. Beasley could perform sedentary work. *Id.* Accordingly, the ALJ did not err in failing to mention the specific statement complained of above.

### 2.3. MRI Reports

Mr. Beasley argues the ALJ erred in assessing his MRI examinations. He argues the ALJ misrepresented the report regarding an exam performed in August 2006 stating "A MRI of the lumbar spine taken in August 2006 revealed benign findings of minimal degenerative disc features." Dkt. 28 at 3. The record does not support Mr. Beasley's argument. The August 2006 Report under "Findings" states: "Disc and neuroformina are essentially normal from the low thoracic spine through L3-4"; "L3-4: Minimal degenerative disc features are present"; "L4-5: Minimal degenerative disc features are present"; L5-S1: Disc height is preserved." Tr. 357. Hence, contrary to Mr. Beasley's contention, the ALJ's statement regarding the findings made in the August 2006 report tracks the actual report.

Mr. Beasley also argues the ALJ committed reversible error by failing to mention the August 2006 report's impressions[7] and failing to mention Mr. Beasley's other MRI reports. Tr. 357. Reversal is mandated, Mr. Beasley contends, because the ALJ's failures constitute a failure to assess all of the evidence and failed to consider the MRI reports that "showed very

---

[7] The August 2006 Report contained the following "impressions": Early degenerative disc features L3 through S1.2; far left posterolateral broad-based disc osteophyte complex at L3-4, which may affect the left third nerve root; and broad based, dessicated disc protrusion at L4-5, which may affect the axillary aspect of the left fifth nerve root in the lateral recess. Tr. 357

REPORT AND RECOMMENDATION- 7

significant pathology." Dkt. 28 at 4.  Other than making this conclusory statement, Mr. Beasley fails to articulate the basis for his contention that the reports shows "significant pathology," the impairments caused by this pathology, and the effects of these impairments, if any, on his ability to work.  For example, what exactly is the Court supposed to make of August 2006 impression of a dessicated disc protrusion at L4-5, which may affect the axillary aspect of the left fifth nerve root in the lateral recess?  This sounds "significant" but without some medical evidence, in the record discussing this condition and its impact on Mr. Beasley, the Court is essentially being asked to play doctor and to render its own medical opinion.  Mr. Beasley points to nothing in the record to support his contention that the MRI reports establish he suffers significant pathology rendering him unable to work; the Court therefore cannot reverse the ALJ on this argument.

The Court also notes the ALJ was aware of Mr. Beasley's back condition as he found there is "some evidence pertaining to a lumbar and thoracic condition." Tr. 26.  Specifically, the ALJ stated

> A MRI of the lumbar spine taken in August 2006 revealed benign findings of minimal degenerative disc features and a July 2006 x-ray indicated mild scoliosis and spondylosis (exhibit F. 357, 355). January 2007 imaging of the thoracic spine showed developmental-shaped thorocolumbo scoliosis, age related spondylosis, and March 2007 imaging indicated dextro convex thoracic scoliosis, but was otherwise interpreted as normal (F. 358, 362). Given the objective medical evidence, I find these conditions to be not severe.

Tr. 26.  Given this discussion, the Court finds the ALJ did not fail to assess or fail to consider all of the MRI reports.  While Mr. Beasley obviously disagrees with the ALJ's assessment of the MRI reports, he fails to articulate exactly what medical evidence supports his belief that the MRI reports show he is unable to perform sedentary work.  As such, the Court finds the ALJ's assessment of the MRI reports is not grounds for reversal.

REPORT AND RECOMMENDATION- 8

### 3. Evaluation of Mr. Beasley's Testimony

In evaluating the effect of pain and other subjective symptoms on a claimant's residual functional capacity, the ALJ must first determine whether the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. *See* 20 C.F.R. § 404.1529. The ALJ found Mr. Beasley's impairments could be reasonably be expected to produce some of his alleged symptoms. Tr. 32.

Having made this finding, the ALJ must next evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity for work. *See id.* If there is no evidence of malingering, the ALJ may reject the claimant's testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

Mr. Beasley testified he was "bombarded with chronic pain" and that pain was what prevented him from working. Tr. 677. Mr. Beasley further testified he was always in pain and that it dominated his life. Tr. 677-82. The ALJ discounted Mr. Beasley's testimony for four reasons. First, the ALJ found the medical evidence did not support Mr. Beasley's testimony. Tr. 32. The ALJ discussed how the medical evidence showed Mr. Beasley, despite having physical impairments, nonetheless retained the physical capacity to perform sedentary work. Tr. 30-34. The ALJ's discussion of the medical reports focused on Mr. Beasley's physical ability to perform sedentary work. The ALJ did not discuss whether there was medical evidence that Mr. Beasley's pain did not affect his ability to work. The ALJ's discussion of the medical evidence is thus not a basis to reject Mr. Beasley's pain testimony.

Moreover, the ALJ's focus on Mr. Beasley's physical ability to perform work omitted

REPORT AND RECOMMENDATION- 9

medical opinions about how pain affected his ability to work. For instance, the ALJ cited to a comprehensive physical evaluation that concluded Mr. Beasley could perform sedentary work. Tr. 32. But in rejecting Mr. Beasley's testimony, the ALJ omitted the evaluation's conclusion that Mr. Beasley's pain complaints would affect his ability to perform sedentary or light work. The evaluation to which the ALJ cited stated:

> His perceived level of pain however and limited work tolerance are primary restricting factors. His return to work goals as a theater manager and musician would be challenging. As a theater manager he would be required to be quite mobile both in stand and walk modes and as a musician he would be required to sustain either a seated or half-stand posture for significant periods of time which he was unable to do during the 2 day PCE, without significant complaint of pain.
>
> . . .
>
> Based on the PCE he is currently functioning at sedentary to light labor capacity and unless pain and functional mobility of the (R) lower extremity can be managed in rehabilitation efforts, he is self limiting due to pain and will be unable to perform the jobs evaluated by this PCE.

Tr. 527. It is thus clear that there is medical evidence showing Mr. Beasley's pain affected his functional capacity—evidence which the ALJ apparently overlooked. The importance of Mr. Beasley's pain is highlighted by the questions the ALJ asked at the hearing he conducted. The ALJ asked the vocational expert two hypothetical questions; the second reflected Mr. Beasley's testimony. In the second hypothetical, the expert was asked to assume Mr. Beasley had the capacity to perform sedentary work but needed a "sit/stand option at will." Tr. 687. The expert testified that if Mr. Beasley needed to sit or stand as needed, the job base would be "significantly eroded," indicating there are no jobs existing in significant numbers that Mr. Beasley could perform. *Id.* Hence, if the ALJ had fully credited Mr. Beasley's testimony, he might have reached a different decision.

REPORT AND RECOMMENDATION- 10

Second, the ALJ discounted Mr. Beasley's testimony because he was not taking his "medications." Tr. 30- 33.  This finding is based on Mr. Beasley's medical history prior to 2006. Unexplained failure to seek treatment or follow a prescribed course of treatment is a clear and convincing reason to question a claimant's credibility.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Here however, Mr. Beasley testified that he avoided pain medications because as a former law enforcement officer he was "against drugs" and was afraid of becoming a drug addict.  Tr. 682.  The failure to seek treatment cannot be held against a claimant where the claimant has a good reason for not seeking more aggressive treatment.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Mr. Beasley's leeriness about becoming addicted to pain medications is a good reason for his conservative treatment decisions.

The reasonableness of Mr. Beasley's decision to delay use of pain medications is supported by the medical evidence that he was doing fairly well without medications until mid-2006.  Dr. Lindahl, a treating doctor, stated that Mr. Beasley "has done fairly well without the use of chronic pain medicines until mid 2006 when was started on Refalen and as needed narcotics."  Tr. 270.  By the time Mr. Beasley appeared before the ALJ in 2007, he was using pain medications and testified he was taking them because he "had no choice."  Tr. 682.  Dr. Lindahl's notes indicate Mr. Beasley reached a point in 2006 where the severity of his pain overcame his reluctance to use them.  Mr. Beasley's ability to do fairly well without medications prior to 2006 is another good reason for Mr. Beasley's conservative treatment decision; thus his failure to take medications prior to 2006 is not a convincing reason to discount his testimony.

Third, the ALJ discounted Mr. Beasley's testimony because he was not pursuing physical therapy consistently and vigorously, climbed a ladder in 2005, and did not complete, in 2003, vocational training, which the ALJ viewed as "manipulation."  Tr. 33.  The records the ALJ

REPORT AND RECOMMENDATION- 11

relied upon involve the time period between 2000 and 2005.  The records from this time period do not provide a complete picture of Mr. Beasley's medical history.  As indicated above, Mr. Beasley's medical situation and functional abilities from 2000 to 2005 appear to be different than his situation and abilities after that time period.

Dr. Lindahl noted, before 2006, Mr. Beasley was doing "fairly well" without using pain medications, an indication he was functioning at a higher level than at present.  Because it appears he was functioning at a higher level, it is not surprising he could climb a ladder, did not participate consistently in physical therapy and did not complete vocational training.[8]  But after 2005, his condition apparently worsened and he began taking medications and began to do some physical therapy.  The ALJ's failure to distinguish between the two time periods is problematic.  Mr. Beasley's testimony was discounted by measuring it only against medical evidence from the 1999 to 2005 time period.  However, measured against the time period after 2005 where his pain complaints increased, Mr. Beasley's testimony seems more in line with the medical evidence.

Fourth, the ALJ discounted Mr. Beasley's testimony on the grounds his "activities of daily living show he has the capacity to perform sedentary work." Tr. 33.  Specifically the ALJ indicated Mr. Beasley cared for his children, administered medications and took care of himself.  Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

---

[8] The Court notes Mr. Beasley argues ALJ improperly rejected his testimony by failing to address his concerns at the hearing rather than drawing an adverse credibility inference.  This argument is not persuasive. An ALJ is not required to give an opportunity to explain inconsistencies or other factors affecting credibility. *See Tonapetyan v. Halter*, 242 F3d 1144, 1148 (9th Cir. 2001).

REPORT AND RECOMMENDATION- 12

The ALJ's assessment of Mr. Beasley's daily activities appears to be based on function reports Mr. Beasley completed in 2004.  Tr. 157, 224.  As noted above, Mr. Beasley's medical records indicate that he was functioning at a higher level before 2006 and at a lower level after that point as his pain increased.  Although the ALJ questioned Mr. Beasley at the 2007 hearing, he did not ask him about his daily activities.  Hence the ALJ relied on Mr. Beasley's 2004 function reports about his daily activities.  Because these reports were not updated, they do not paint an accurate picture of Mr. Beasley's daily abilities after 2005.

Additionally, the ALJ may not penalize a claimant for attempting to live a normal life in the face of his limitations.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  Mr. Beasley's function reports indicate he performed daily activities to fulfill his duties to his children but that it was struggle.  Tr. 159.  The Court notes this discussion raises an onset date issue.  Mr. Beasley alleges an onset date of 1999.  As discussed above, Mr. Beasley's daily activities and functional capacity from 1999 to 2006 may be different than his activities and functional capacity thereafter.  The Court cannot resolve this issue, now, but notes it for the parties' future consideration.

**4. Evaluation of Lay Testimony**

Carolyn Hope and Theodore Depore provided third party adult function reports in 2004.  Tr. 122, 131.  The ALJ found their reports support "the residual functional capacity for at least sedentary work" and gave their reports "some weight."  Mr. Beasley argues this assessment is incorrect and that the reports of these witnesses show Mr. Beasley cannot perform sedentary work.  Dkt. 13 at 22; Dkt. 28 at 8-9.

The ALJ determines credibility and resolves conflicts and ambiguities in the evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court may neither reweigh the

REPORT AND RECOMMENDATION- 13

evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

This case does not involve lay evidence that unequivocally shows Mr. Beasley cannot perform sedentary work. Certainly, Mr. Beasley argues the lay evidence as showing he cannot work, an argument resting on interpreting the evidence. Since the argument can go either way, it is the ALJ's interpretation that the Court must yield to. Hence the ALJ did not err in finding the lay witnesses reports support a finding of a residual functional capacity of sedentary work, at least for the time period before 2006.

**5. Mr. Beasley's Residual Functional Capacity**

Mr. Beasley argues that as the ALJ's functional assessment is not supported by substantial evidence, the Court should find him disabled. Tr. 13 at 24. This contention is overbroad. As discussed above, there is evidence that before 2006, Mr. Beasley may have had the functional capacity to perform sedentary work. The question that has not been satisfactorily answered by the ALJ is what impact Mr. Beasley's chronic pain has on his ability to work. In 2000, a physical capacity examination found Mr. Beasley was capable of sedentary work but noted that unless his pain was managed, Mr. Beasley would not be able to perform sedentary work. Tr. 527. From 2000 to 2005, Mr. Beasley's pain was manageable: he did not use pain medications, had little incentive to undergo retraining and therapy, and was able to perform many daily activities. But after 2005, his pain increased and he began taking pain medications and began therapy. The ALJ's assessment of the effect pain had on Mr. Beasley is based on reports and medical information generated before 2006 and does not capture the impact of pain on Mr. Beasley's functional capacity for the time period thereafter.

REPORT AND RECOMMENDATION- 14

Further proceedings are necessary to flesh out Mr. Beasley's pain complaints. On remand, the ALJ should reconsider the entire medical record and further develop the medical evidence as necessary. It may be the ALJ will find Mr. Beasley's chronic pain diminished his ability to perform even sedentary work from the date of alleged onset, or that pain diminished his ability to work only at some later point. Or, it may be the ALJ will conclude that notwithstanding the increase in Mr. Beasley's pain complaints, he still retains the ability to work. The Court leaves resolution of these and the other issues noted above for the ALJ to resolve.

## CONCLUSION

For the foregoing reasons, the Court recommends the Commissioner's decision be **REVERSED** and this case is **REMANDED** for further administrative proceedings. On remand, the ALJ should: (1) further develop the medical evidence, as necessary; (2) reevaluate the medical opinions in the record, (3) reassess Mr. Beasley's credibility; (4) reevaluate Mr. Beasley's RFC; and (5) reassess steps four and five of the sequential evaluation process with the assistance of a vocational expert if deemed appropriate. A proposed order accompanies this Report and Recommendation.

DATED this 24th day of March, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION- 15